## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID CANTRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No.    CIV-11-1432-D** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT & RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (TR. ___). The parties have briefed their positions and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI alleging a disability beginning May 19, 2002 (TR. 13, 130). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 130). Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a *de novo* hearing on June 16, 2008 (TR. 130).

Plaintiff appeared with a representative and testified in support of the applications.   The ALJ issued a partially favorable decision on September 30, 2008, finding that Plaintiff had been disabled from December 1, 2002, the onset date as amended at the hearing, through January 31, 2006 (TR. 125-142).   Plaintiff appealed.   The Appeals Council granted Plaintiff's request for review, found that the ALJ's decision was not supported by substantial evidence and was legally flawed, vacated the entire partially favorable decision and remanded the case.   On remand the case was assigned to a different ALJ (TR. 143-147).

The Appeals Council instructed the ALJ to grant Plaintiff a new hearing; to obtain additional evidence and evaluate Plaintiff's musculoskeletal impairments; to obtain additional evidence, if warranted, from a medical expert to clarify the nature and severity of Plaintiff's impairments; to further evaluate Plaintiff's subjective complaints; to give further consideration to Plaintiff's maximum residual functional capacity by evaluating treating and examining source opinions; to obtain supplemental evidence from a vocational expert to allow a comparison between the mental and physical demands of Plaintiff's past relevant work and his residual functional capacity; and, should the decision proceed to step five, to determine the effect of Plaintiff's assessed limitations on the occupational base of any job Plaintiff could do.   Finally, the Appeals Council instructed the ALJ to fully evaluate the issue of disability cessation, should the ALJ find that Plaintiff was entitled to a closed period of disability (TR. 146-147).

On March 16, 2010, a second ALJ held another administrative hearing, as instructed by the Appeals Council (TR. 62-92).   Plaintiff appeared and testified in support

of his applications for benefits.  At the request of the ALJ, a vocational Expert (VE) and a medical expert (ME) also testified.  The ALJ issued a wholly unfavorable decision on May 15, 2010 (TR. 9-55).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (TR. 3-7), and the opinion of the second ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act for DIB through December 31, 2006 (TR. 15).   The ALJ then followed the sequential evaluation process required by agency regulations.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920.   At step one, the ALJ noted that Plaintiff had engaged in gainful activity after the alleged onset date.  At times, Plaintiff's gainful activity appeared to be "substantial gainful activity."  Ultimately, however, the ALJ determined that, when averaged over the relevant periods, Plaintiff's earnings did not constitute substantial gainful activity (TR. 15).   Therefore, the ALJ continued to the second step of the administrative process.

At step two, the ALJ determined that Plaintiff has the following severe impairments:

> disorders of the cervical and lumbar spine, discogenic and degenerative, mild to moderate; bilateral impingement syndrome of the shoulders, right more than left, status post September 2004 right shoulder surgery; ulnar nerve neuropathy of the elbows, mild to moderate; bilateral carpal tunnel syndrome, right more than left, mild to moderate; fracture of the left great toe, healed; diabetes mellitus; hypertension; gastroesophageal reflux disease; obesity; and non-specific chest pain versus chest wall pain versus stable angina, with no significant evidence of cardiac ischemia, which singly and/or in combination are severe

(TR. 15).  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 29).

The ALJ next considered Plaintiff's RFC:

4

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant must be able to change position every hour as needed.  Further, the claimant is limited to only occasional stooping, kneeling, crouching, crawling, balancing and climbing of this [sic] ramps and stairs, but no climbing of ladders, ropes and/or scaffolds, as well as no overhead reaching with the right dominant upper extremity, and avoidance of all exposure to workplace hazards, such as dangers [sic] moving machinery and unprotected heights.  Additionally, the claimant is limited to only occasional handling, or are you a [sic] fingering and feeling with the dominant right hand, as well as frequent handling, fingering and feeling with the left hand

(TR. 29).

At step four of the sequential evaluation, the ALJ found that Plaintiff is unable to perform his past relevant work (TR. 53).  At step five, the ALJ relied upon the testimony of the VE in determining that Plaintiff could perform the light, unskilled occupations of furniture rental consultant and film counter clerk (TR. 54).

## ISSUES PRESENTED

Plaintiff contends that the ALJ applied the wrong legal standards in evaluating Plaintiff's credibility.  Plaintiff also challenges the ALJ's RFC on the bases that the ALJ failed to properly weigh the ME's opinion against the other medical source opinions in the record; that the ALJ improperly discredited opinions of examining medical sources which  contradicted the ALJ's RFC; and that the ALJ supplied his own interpretation of the conclusions of one medical source.

**ANALYSIS**

**I.     The ALJ's Credibility Assessment**

Plaintiff contends that the ALJ applied the wrong legal standards in evaluating Plaintiff's credibility.  According to Plaintiff the ALJ relied only on evidence from which he could impute a negative connotation to discredit Plaintiff's credibility.  Additionally, Plaintiff contends that, when assessing his credibility, the ALJ committed reversible error by using boilerplate language derived from a template developed by the SSA.

In *Wilson v.* Astrue, 602 F.3d 1136 (10th Cir. 2010), the Tenth Circuit Court of Appeals restated the salient points a court must consider when reviewing credibility determinations:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).   However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability").

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  The Court also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted).  In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

At the first phase of step four, the ALJ found that Plaintiff's RFC allows him to do light work with some nonexertional limitations (TR. 29).  Then, after reciting the three step process required for the assessment of a claimant's symptoms and credibility, (TR. 30), the ALJ summarized Plaintiff's testimony regarding his allegedly disabling impairments:

> At the hearing on March 16, 2010, the claimant was asked what impairments he has that have kept him from being able to work since 2002.  The claimant first stated that he sustained a torn rotator cuff in his right shoulder, as well as a neck and back injury in May 2002.  He noted that although he had undergone shoulder rotator cuff repair, it hurts worse now than it did before, adding that he has ongoing pain in his neck and back, with trouble walking for long periods and walking on uneven surfaces. He also stated that he gets

> back pain if he sits for too long and that his legs go numb
> and start tingling.   He stated that he has carpal tunnel
> syndrome in both hands, as well as ulnar nerve damage in
> both elbows . . .  The claimant stated that his worst problem
> is the cramping in his hands, because he can take muscle
> relaxers and pain pills for his neck and back when they start
> hurting, but they do not work when his hands curl up and
> cramp and that they do not get rid of the burning and
> tingling sensation in his hands. The claimant further testified
> his problems had gotten worse since 2002, stating that he is
> having more problems with his hand cramping, with
> noticeably more tingling and burning sensation in his hands

(TR. 30).  The ALJ then summarized the medical evidence and Plaintiff's daily activities

before assessing Plaintiff's credibility:

> For all of the foregoing reasons, the undersigned is of the
> opinion that the claimant has exaggerated his allegations of
> pain and other symptoms to the extent that he contends
> that he is unable to perform a narrowed range of light work
> reflected in the residual functional capacity determined by
> the undersigned here in.  **After careful consideration of
> the evidence, the undersigned finds that the
> claimant's medically determinable impairments could
> reasonably be expected to cause some of the alleged
> symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting
> effects of these symptoms are not credible to the
> extent they are inconsistent with the above residual
> functional capacity assessment**

(TR. 33) (emphasis added).   Plaintiff objects to the bolded portion of the ALJ's

credibility assessment.

In *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), the Seventh Circuit Court of

Appeals held that the same conclusory, boilerplate language to which Plaintiff objects

was drafted by the SSA for insertion into any ALJ decision.  The Court concluded that

the boilerplate language implies that ability to work is determined without regard to the

claimant's credibility, and that the ability to work is then used to discount the claimant's credibility.  *Id.* at 644 – 645.  In this case as in *Bjornson*, the organization of the ALJ's decision suggests as much.  In reality, of course, the assessment of a claimant's ability to work often depends at least in part on the credibility of his or her statements concerning the "intensity, persistence, and limiting effects" of symptoms.  *Id.* at 645. In other words, "an applicant's credibility cannot be ignored in determining his ability to work."  *Id.* at 646.  As for mass use of SSA "templates" in decisions, the Seventh Circuit Court of Appeals warned, "The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'"  *Id.* at 646.

The Tenth Circuit Court of Appeals has also disapproved of the use of boilerplate language to justify the rejection of a claimant's subjective complaints of pain or other symptoms.  *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).   In *Hardman*, the ALJ recited boilerplate language, stating that full consideration had been given to claimant's subjective complaints in accordance with the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, and *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir.1987).  But the ALJ then rejected the claimant's allegations of pain and other limitations, using more boilerplate language and few actual facts pertaining to the claimant's testimony:

> Claimant's allegations are not fully credible because, but not limited to, the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for severe pain, the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing

*Hardman*, 362 F.3d at 679.   The Tenth Circuit explained the dangers of relying on

boilerplate language:

> Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case

*Id.* at 679 (citation omitted).

In this case, the ALJ obviously used the boilerplate language from the template

in describing Plaintiff's credibility.   But the ALJ's decision does include a summary of

Plaintiff's testimony regarding his symptoms and nonexertional limitations, his daily

activities, and the paucity of medical treatment for his carpal tunnel syndrome, the

impairment Plaintiff identified as his most severe impairment.   *See supra* at 6.   The

question in this case, then, is whether the ALJ sufficiently supported his credibility

finding, despite the heavy use of meaningless boilerplate language.   "[So] long as the

ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,'

he need not make a 'formalistic factor-by-factor recitation of the evidence.'"   *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156,1167 (10th Cir. 2012) (*citing Qualls v Apfel*, 206 F.3d

1368, 1372 (10th Cir. 2000)).   The ALJ in the instant case cited and relied on daily

activities about which Plaintiff had reported in a functional report:

> [T]he claimant stated that on a typical day, he usually gets up around 6:45 or 7:00 AM, after which he makes coffee, gets his son up, fixes cereal for his son, and takes his son to

> school.  Afterwards, if it's not a Tuesday (on which day he
> goes to work), he generally lies back down until 10:00 and
> then gets up, takes a shower, and gets something to eat.  In
> the evening, he will usually watch a movie with his son and
> spend time with him, occasionally going to the park.  Also,
> every other week he takes his son to Cub Scouts.
> . . .
>
> On his Function Report-Adult, when asked to describe what
> he did from the time he wakes up until going to bed, the
> claimant indicated that among other activities he checks his
> email, and subsequently, he indicated that he also uses his
> computer for such activities as shopping.  In addition, on his
> Function Report-Adult, the claimant reported taking care of a
> dog, which involved feeding and watering the dog, as well
> as letting the dog outside.  Further, on his Function Report-
> Adult, the claimant admitted that he gets out of the house
> on a daily basis and that he visits others a few times a week

(TR. 32).  The ALJ also cited Plaintiff's reluctance to undergo carpal tunnel release

surgery as an indication that Plaintiff's pain was not as severe as he claimed (TR. 31).

Because the ALJ explained his reasons for the credibility assessment, the

inclusion of one boilerplate sentence does not require reversal.  *See*, *e.g., Jackson v.

Astrue*, No. CIV-11-440-M, 2012 WL 831351, at *7-8 (W.D. Okla. Feb. 13, 2012)

(unpublished report by magistrate judge, holding that the explanation for the credibility

assessment was sufficient--notwithstanding inclusion of a similar boilerplate sentence--

because the ALJ had spelled out his reasons), adopted, 2012 WL 830505 (W.D. Okla.

Mar. 9, 2012) (unpublished order by district judge).

## II.    The ALJ's RFC Assessment

Plaintiff contends that the ALJ erred in giving the greatest weight to the opinions

of the ME.  According to Plaintiff, the ME's opinion was based only on objective medical

findings without regard to Plaintiff's subjective complaints. Plaintiff's argument is without merit.

The ALJ thoroughly discussed the medical evidence in the record and the opinions of treating, examining and reviewing physicians.  The ALJ gave the greatest weight to the opinions of the ME, Dr. Ollie Raulston (TR. 43).  However, the ALJ also gave great weight to the opinions of treating physicians including Dr. Vosburgh, Dr. Field and Dr. Watts (TR. 43 – 45).  The ALJ gave no significant weight to the opinion of Dr. Shields because the ALJ determined that Dr. Shields' opinion contained unsupported assessments of Plaintiff's functional limitations and because his opinion was inconsistent with other substantial medical evidence of record (TR. 47).  Additionally the ALJ gave no significant weight to the opinions of Dr. Saidi regarding Plaintiff's physical limitations, but he gave full weight to the objective clinical diagnostic findings reported by Dr, Saidi (TR. 51).  Dr. Saidi is a consultative physician who examined Plaintiff only once. Plaintiff contends that the ALJ erred in failing to account for Dr. Saidi's findings that Plaintiff had walking and standing limitations.  The ALJ noted, however, that Dr. Saidi's findings were based on Plaintiff's subjective complaints.   The ALJ's findings are supported by substantial evidence.  The only objective findings in Dr. Saidi's report of his examination are based on decreased range of motion associated with pain (TR. 772-777).  Moreover, Dr. Saidi concluded that despite limited ranges of motion, Plaintiff would be able to sit for three hours, stand for three hours and walk for two hours in an 8-hour workday (TR. 773).

Finally, Plaintiff contends that the ALJ's RFC assessment was flawed because it did not include limitations assessed in Dr. Watts' treating source opinion regarding Plaintiff's bilateral carpal tunnel syndrome.  Contrary to Plaintiff's contention, however, the ALJ noted that in 2000 and 2008, Dr. Watts diagnosed Plaintiff with bilateral carpal tunnel syndrome and opined that Plaintiff should avoid repetitive heavy gripping (TR. 756). Dr. Watts' opinion as to Plaintiff's limitations caused by carpal tunnel syndrome is reflected in the ALJ's RFC which limits Plaintiff to occasional handling fingering and feeling with the right dominant hand, and frequent handling, fingering, and feeling with the left hand (TR. 29).

In sum, the ALJ's credibility findings are legally sound and supported by substantial evidence in the record.  Moreover, the ALJ's RFC formulation is supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation.  *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 15, 2013**.  The parties are further advised that failure to make timely objection to this Report and

Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED January 29, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE